# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 24-255V**

| | |
|---|---|
| JEANNE RICHARD,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Chief Special Master Corcoran<br><br>Filed: July 29, 2026 |

*Elizabeth Kyla Abramson, Maglio Christopher & Toale, PA, Washington, DC, for Petitioner.*

*Nathaniel Trager, U.S. Department of Justice, Washington, DC, for Respondent.*

## RULING ON ENTITLEMENT[1]

On February 20, 2024, Jeanne Richard filed a Petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a shoulder injury related to vaccine administration ("SIRVA") – a Table injury – as a result of an influenza ("flu") vaccine administered to her on October 12, 2022.[3] Pet. at 1, ECF No. 1; Am. Pet., ECF No. 17. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

[3] It is not clear from the Amended Petition whether Petitioner alleges Table or off-Table claims. Rather, she alleges a claim for "adverse effects of a vaccination or vaccinations." Am. Pet. at 1, ECF No. 17.

For the reasons set forth below, I find that the onset of Petitioner's shoulder pain likely occurred within 48 hours of vaccination, as alleged, and that she otherwise has satisfied the requirements for a Table SIRVA claim. Petitioner is thus entitled to compensation.

## I. Relevant Procedural History

Following a medical review, the parties attempted to informally resolve this matter but were ultimately unsuccessful. ECF Nos. 24-28. Respondent thereafter filed his Rule 4(c) Report defending this case in June 2025, and arguing (among other things)[4] that the filed record does not preponderantly establish a 48-hour onset. ECF No. 30 at 5 (internal citations omitted).

In reaction, Petitioner submitted a brief addressing the arguments raised in Respondent's Rule 4(c) Report, and arguing that she can preponderantly establish entitlement for a Table SIRVA claim. Br., ECF No. 31 at 8-12. Respondent reacted to Petitioner's arguments in his response brief filed on September 4, 2025. Resp., ECF No 32. Respondent maintained that Petitioner's injury was inconsistent with a Table SIRVA claim. *Id.* at 1-3. Petitioner filed a Reply thereafter, addressing Respondent's argument regarding Table onset and also asserting that Respondent has waived his defense regarding an alternative cause pursuant to any causation-in-fact claim. Reply, ECF No. 33. This matter is now ripe for consideration.

## II. Relevant Factual Evidence

I have reviewed all of the medical records and evidence filed to date. Only such information related to the critical issue of onset will be discussed herein, though other facts may be included as necessary.

Petitioner received the subject flu vaccine in her left deltoid on October 12, 2022. Ex. 15 at 2, 4. Approximately 24 days post-vaccination (on November 5, 2022), Petitioner sent a message to her primary care provider ("PCP") stating that she "wanted to make note that after [her] flu shot on October 16 [sic] after the initial muscle soreness [she has] had nerve pain when [she moves her] arm in certain directions[.]" Ex. 11 at 7. Petitioner described her shoulder as "very painful," but the pain was "luckily [] not happening with the majority of [her] daily movements[.]" *Id.* Petitioner was "not asking for an appointment" but was "[j]ust wondering if [the treater was] hearing more about this from the flu shot this fall." *Id.*

[4] Respondent also contested Petitioner's ability to establish an off-Table SIRVA claim. ECF No. 30 at 5-6.

On December 7, 2022, thus eight weeks post vaccination, Petitioner had a visit with her PCP for "left arm pain x *6 weeks*." Ex. 2 at 41 (emphasis added). Petitioner reported a "muscular pain in her arm when she received a flu shot on 11/16/2022 [sic]. Now, she is having deep aching pain." *Id.* She denied any injuries but noted her daily activities included playing basketball with her son. *Id.* A physical examination showed pain with range of motion ("ROM"). *Id.* at 42. An x-ray performed the same day included a history of "left arm pain – deep ache x 6 weeks." *Id.* at 57. Later that month (on December 23, 2022), Petitioner sent another message to her PCP reiterating that she "fe[lt she has] nerve damage after getting [her] flu shot[.]" Ex. 11 at 14.

Thereafter, Petitioner received acupuncture treatment on February 1, 2023. Ex. 6 at 3. Petitioner reported "4 months L arm pain[,]" which "started after flu shot." *Id.* Additionally, Petitioner saw a neurologist in connection with an EMG[5] on February 8, 2023. Ex. 7 at 71. Petitioner reported "4 months of progress [sic] intermittent pain in the left arm." *Id.* She "note[d] onset of symptoms at about the same time as she got her flu shot." *Id.* She also described her pain as "searing . . . that lasts about 30 seconds" and occurs "several times a day." *Id.*

During a PCP follow-up visit on February 27, 2023, Petitioner reiterated that her "[p]ain started in October after her flu shot." Ex. 2 at 43. But Petitioner also noted that she "play[ed] basketball with her son around the same time and doesn't know if maybe she injured it then too." *Id.* Petitioner explained that "[i]nitially it was painful when she reached behind her. It has increased since December." *Id.* She also noted that acupuncture, ice, and transcutaneous electrical nerve stimulation ("TENS") had been unsuccessful at treating her pain. *Id.*

On March 29, 2023, Petitioner had an initial physical therapy ("PT") evaluation. Ex. 4 at 13. She reported "L upper arm/shoulder pain following flu shot in Oct [sic] 2023 [sic]." *Id.* Petitioner noted that "this pain was consistently present for the next 2 months." *Id.* Petitioner stated that she had been participating in physical activities, including yoga, and that her "pain has increased over the past month or so." *Id.* Physical examination findings (limited range of motion and weakness) were thought to be consistent with adhesive capsulitis. *Id.* at 14-15. Petitioner thereafter attended approximately 20 sessions through July 2023 (approximately nine months post vaccination), with some noted progress documented at the end of her course of PT. *See id.* at 3-16; *see also* Ex. 14 at 3-4.

---

[5] The EMG was interpreted as a "normal study." Ex. 7 at 71.

No other medical records or declaration evidence[6] related to the onset of Petitioner's left shoulder symptoms has been filed.

## III. Legal Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). Any petitioner alleging a Vaccine Act claim has one foundational evidentiary obligation: to prove that he "received a vaccine set forth in the Vaccine Injury Table." Section 11(c)(1)(A). Additionally, when alleging a Table SIRVA injury as in this case, a petitioner must show he received the vaccine intramuscularly in his injured upper arm/shoulder. 42 C.F.R. § 100.3(c)(10) (2017) (Qualifications and Aids to Interpretation for a Table SIRVA).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[7] a petitioner must establish that he suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

Section 11(c)(1) also contains requirements concerning the type of vaccination received and where it was administered, the duration or significance of the injury, and the lack of any other award or settlement. *See* Section 11(c)(1)(A), (B), (D), and (E). With regard to duration, a petitioner must establish that he suffered the residual effects or complications of such illness, disability, injury, or condition for more than six months after the administration of the vaccine. Section 11(c)(1)(D).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

---

[6] Petitioner's declaration does not describe the onset of her injury or her course of treatment with any detail or particularity. *See generally* Ex. 12.

[7] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g*. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs*., No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs*., No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health &*

*Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 204 (2013) (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## IV. Factual Findings and Ruling on Entitlement

### A. Table SIRVA Elements

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

#### 1. Petitioner Has No Prior Left Shoulder Condition or Injury

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Respondent has not contested that Petitioner meets this criterion, and there is nothing in the filed evidence to suggest otherwise.

#### 2. Onset of Petitioner's Injury Occurred within 48 Hours of his Vaccination

The second requirement for a Table SIRVA is that the onset of shoulder pain began within 48 hours of the subject vaccination. 42 C.F.R. § 100.3(c)(10)(ii). As noted, Respondent contends that Petitioner's medical records do not support that the onset of

her pain occurred within 48 hours of vaccination. Respondent's Report at 5. Respondent argues that when Petitioner reported left shoulder pain at her first post-vaccination visit, she described an incorrect vaccination date, and stated that her pain began as nerve pain after her initial muscle soreness had subsided but did not provide any timeline of how long after vaccination her pain began. *Id.* (internal citations omitted). Then, at other visits thereafter, Petitioner reported an onset of pain beginning *two weeks* post vaccination. *Id.* And, when she linked her pain to her October 2022 vaccination, Petitioner noted that she had played basketball with her son around that same time, which she believed might have caused the injury. *Id*.

Despite Respondent's reasonable objections, the totality of the evidence favors Petitioner's onset contentions – although it is a *very* close call. The aforementioned medical records establish that Petitioner consistently reported to treaters (for the most part) an onset close-in-time to vaccination; that she was prompt in complaining of shoulder issues (proving some secondary corroboration for onset); and that she otherwise was experiencing symptoms in the relevant timeframe.

The fact that Petitioner first contacted her treater regarding her left shoulder pain within just over three weeks of vaccination (on November 5, 2022) warrants some evidentiary weight. In other cases, *significantly greater* delays have not undermined an otherwise-preponderantly-established onset showing consistent with the Table. *See,* e.g., *Tenneson v. Sec'y of Health & Hum. Servs*., No. 16-1664V, 2018 WL 3083140, at *5 (Fed. Cl. Spec. Mstr. Mar. 30, 2018), *mot. for rev. denied,* 142 Fed. Cl. 329 (2019) (finding a 48-hour onset of shoulder pain despite a nearly six-month delay in seeking treatment); *Williams v. Sec'y of Health & Hum. Servs*., No. 17-830V, 2019 WL 1040410, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (noting a delay in seeking treatment for five-and-a-half months because a petitioner underestimated the severity of her shoulder injury).

The delay here is not nearly as long, and a delay in seeking treatment itself also is not *per se* evidence of a non-conforming onset. I also note that Petitioner here did not attend any intervening visits between vaccination and her first complaint and subsequent visit for left shoulder pain, further supporting the conclusion that her pain began close-in-time to vaccination.

In addition, although the filed medical records bearing on onset are *fairly* limited and contain some inconsistencies, Petitioner affirmatively and repeatedly linked her shoulder pain to the subject flu vaccine – beginning with the November 5th message encounter, at which time she noted an onset of pain "after [her] flu shot[.]" Ex. 11 at 7. Although she reported an incorrect date of vaccination (October 16th versus October 12th), this inexact recall is not wholly inconsistent with an onset that began close-in-time to

vaccination. More so, Petitioner explained that her nerve pain injury began "after the initial soreness." *See id.* Contrary to Respondent's assertions, this reporting does not likely evince an injury that had "subsided" following the initial, expected post-vaccination pain and then returned at an unspecified later time. Rather, Petitioner's reporting on this date provides support for a post-vaccination injury that began with expected soreness but worsened over time.

Other subsequent medical records also consistently corroborate Petitioner's contention that her left shoulder pain began within 48 hours of vaccination. *See,* e.g., Ex. 11 at 14 (a December 23, 2022 report of "nerve damage after getting [her] flu shot[.]"); Ex. 6 at 3 (a February 1, 2023 complaint of "4 months L arm pain[,]" that "started after flu shot."); Ex. 7 at 71 (a February 8, 2023 report of "4 months" of shoulder pain that started "at about the same time" as her flu vaccination); Ex. 2 at 43 (a February 27, 2023 report that her "[p]ain started in October after her flu shot."); Ex. 4 at 13 (a March 29, 2023 report of pain "following flu shot in Oct [sic] 2023 [sic]."). These onset references may lack precision, but they are similar to those from other Program decisions[8] where onset was decided in the petitioner's favor despite ambiguity or slight inaccuracies in reporting.

Admittedly, at least one medical record entry describes an onset of Petitioner's left shoulder pain as beginning *weeks* post vaccination (e.g., the December 7, 2022 PCP report of left shoulder pain for the last "6 weeks," placing onset as approximately *two weeks* post vaccination – *see* Ex. 2 at 41; *see also id.* at 57). But I do not find this entry to outweigh the totality of evidence, which balances slightly in favor of Petitioner's onset contentions. In fact, despite the entry referring to six weeks of pain, and Petitioner's incorrect reporting of her vaccination *date* (noting an administration on 11/16/2022), Petitioner nonetheless reported a "muscular pain in her arm *when* she received a flu shot[.]" Ex. 2 at 41 (emphasis added). This reporting is mostly consistent with Petitioner's other reports concerning the onset of her shoulder pain and provides support for an onset that was soon after (or simultaneous with) vaccination.

In the end, this is a close call, but Program precedent instructs resolving such matters in a petitioner's favor. I also observe, however, that some of the evidence bearing

[8] For example, Petitioner relies on *Williams v. Sec'y of Health & Hum. Servs.,* No. 17-1046V, 2020 WL 3579763 (Fed. Cl. Spec. Mstr. Apr. 1, 2020) to argue that "inexact" descriptions of onset may satisfy the Table's onset requirement (Br. at 10-11). The *Williams* petitioner consistently reported an onset of pain that began (or was present since) the same month and year as vaccination – without any statements to the contrary. Notably, *Williams* was decided by another special master and outside of the SPU, and I thus afford Petitioner's reliance on it lesser weight in resolving this issue. However, other SPU decisions have applied the same reasoning, and found that where a petitioner consistently reported the onset of pain beginning in the same month and year of vaccination (often without specifying the exact vaccination date) it is enough to establish this Table criterion. *See,* e.g., *Ditzian v. Sec'y of Health & Hum. Servs.,* No. 23-1052V, 2025 WL 1276826 (Fed. Cl. Spec. Mstr. Mar. 31, 2025).

on onset also suggests some damages limitations. In particular, the December 7, 2022 record (which describes an onset as beginning after Petitioner's receipt of a flu vaccine) also includes a reference to a possible exacerbation of shoulder issues associated with physical activity (playing basketball). Ex. 2 at 41. And in a later report (on February 27, 2023), Petitioner more specifically reported that she "play[ed] basketball with her son around the same time [as vaccination] and doesn't know if maybe she injured [her left shoulder] then too." *Id.* at 43. These references do not prevent an onset determination, but they do establish confounding factors that will be taken into account in calculating damages.

### 3. Petitioner's Pain was Limited to her Left Shoulder

The third QAI requirement for a Table SIRVA requires a petitioner's pain and reduced range of motion to be "limited to the shoulder in which the intramuscular vaccine was administered." 42 C.F.R. § 100.3(c)(10)(iii). Respondent has not contested this element, and there is nothing in filed record to find this issue cannot be decided in Petitioner's favor. Petitioner has therefore established this QAI criterion.

### 4. There is No Evidence of Another Condition or Abnormality

The last criterion for a Table SIRVA states that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not dispute this element for a Table SIRVA claim, and I thus find it is met.

## B. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly in her left shoulder on October 12, 2022, in New York. *See* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Section 11(c)(1)(E) (lack of prior civil award). As stated above, I have found that the onset of Petitioner's left shoulder pain was within 48 hours of vaccination. *See* 42 C.F.R. § 100.3(c)(10)(ii) (setting forth this requirement). This finding also satisfies the requirement that Petitioner's first symptom or manifestation of onset occur within the time

frame listed on the Vaccine Injury Table. 42 C.F.R. § 100.3(a)(XIV)(B) (listing a time frame of 48 hours for a Table SIRVA following receipt of the influenza vaccine). Therefore, Petitioner has satisfied all requirements for a Table SIRVA. Additionally, Petitioner has established the six-month severity requirement. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). I therefore find that Petitioner is entitled to compensation in this case.

**Conclusion**

The medical record preponderantly establishes that Petitioner experienced the onset of her shoulder injury within 48 hours of the subject vaccination on October 12, 2022. Petitioner has also established all other elements for a Table SIRVA, and is therefore entitled to compensation. A separate order regarding damages will be issued along with the instant Ruling.

I will note, however (in the aim of facilitating informal damages resolution between the parties), that this case seems to involve a mild SIRVA injury overall. Petitioner's post-vaccination treatment persisted for approximately nine months, and included physical therapy and other conservative treatment measures only. Petitioner also engaged in physical activities throughout her treatment course (i.e., basketball, yoga, Ex. 2 at 43; Ex. 4 at 13) that reasonably could have exacerbated her vaccine injury (meaning not all treatment costs are recoverable). Thus, Petitioner should not expect more than a modest award in this case.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master